2109

LLB

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PSN ILLINOIS, LLC

    Plaintiff,

v.

SIGMA-ALDRICH CORP., EMD CHEMICALS INC., VWR INTERNATIONAL LLC, ORBIGEN, INC., AXXORA LIFE SCIENCES, INC., CAYMAN CHEMICAL COMPANY, INC., ORIGENE TECHNOLOGIES, INC., SUPERARRAY BIOSCIENCE CORP., TOCRIS BIOSCIENCE, AND MILLIPORE CORP.

    Defendants.

No. 08 CV 3742

Rebecca R. Pallmeyer

## SIGMA-ALDRICH CO.'S THIRD-PARTY COMPLAINT

Defendant Sigma-Aldrich Company, by and through its attorney LaDonna L. Boeckman of the law firm of Cray Huber Horstman Heil & VanAusdal, LLC for its Third-Party Complaint against ExAlpha Biologicals, Inc. states as follows:

1. This lawsuit is a civil action arising under the patent laws of the United States, including 35 U.S.C. §§ 1 *et seq.* The third-party complaint is a civil action for breach of contract and indemnity arising out of the same transaction or occurrence as the allegations of the underlying complaint.

2. On information and belief, Exalpha Biologicals, Inc. is a corporation organized under the laws of the State of Massachusetts and having a principal place of business at 5 Clock Tower Place, Suite 225, Maynard, Massachusetts 01754.

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 (a) and 1367.

4.      This Court has personal jurisdiction over the third-party defendant, Exalpha Biologicals, Inc. because, among other reasons, Exalpha Biologicals transacts business and has sold to customers, and/or offered for sale to customers, including Sigma-Aldrich Co., products that are at issue in the underlying lawsuit, in this judicial district.

5.      Sigma-Aldrich entered into a contract for the purchase of Edg-5, S1P2, and related products with Exalpha Biologicals.

6.      The contract for the purchase of Edg-5, S1P2, and related products contained the following provision:

> **Indemnification Against Claims**
>
> > Seller agrees to protect, defend, indemnify and hold Buyer harmless from all claims, losses, damages and expenses, which may be asserted against or be incurred by Buyer whether direct or indirect, foreseeable or unforeseeable, including those resulting from injuries to any person or damage to any property, caused in any manner by any act or failure to act of Seller in connection with the furnishing of the goods covered by this Purchase Order, or because of any imperfection or defect in said goods, or based upon any theory of product liability or strict liability in tort, or because of the failure of such goods to be in accordance with the description of such goods as may appear in any catalog, analytical information report, or other technical bulletin as is furnished or utilized by Buyer, or because of the failure of such goods to be produced in compliance with the applicable requirements of this Purchase Order.
>
> See contract attached as Exhibit 1.

7.      The contract for the purchase of Edg-5, S1P2, and related products also contained the following provision:

> **Patent, Trademark and Copyright Infringement**
>
> > Seller agrees to defend, at its cost and expense, all claims, demands and actions which may be asserted against Buyer, its successors, assigns and customers (whether direct or indirect) for all alleged patent, trademark and copyright infringement resulting from the use or resale of goods covered by this Purchase Order, and to indemnify and hold Buyer

        harmless against all costs, expenses (including attorney's fees), and judgments related to such claims, demands and actions.

See Exhibit 1.

8.    PSN Illinois has filed suit against Sigma-Aldrich Company alleging that its resale of Edg-5, S1P2, and related products violates the patents it holds and maintains.

9.    The allegations of PSN Illinois' Complaint against Sigma-Aldrich Company constitute patent infringement claims to which Exalpha Biologicals owe a duty of defense and indemnity to Sigma-Aldrich Company.

WHEREFORE, this defendant/third-party plaintiff, Sigma-Aldrich Company, respectfully requests this Court enter judgment in its favor and against Exalpha Biologicals and find that Exalpha Biologicals owes a duty of defense and indemnity to Sigma-Aldrich Company for the claims and allegations of PSN Illinois' Complaint against Sigma-Aldrich Company and for such other and further relief as this court deems just and proper.

        By:    s/LaDonna L. Boeckman
                  LaDonna L. Boeckman
                  CRAY HUBER HORSTMAN
                  HEIL & VanAUSDAL LLC

LaDonna L. Boeckman (ARDC #6273463)
CRAY HUBER HORSTMAN HEIL &
VanAUSDAL LLC
303 W. Madison St., Suite 2200
Chicago, Illinois 60606
Telephone:    (312) 332-8450
Facsimile:    (312) 332-8451
Email:    LLB@crayhuber.com
Attorneys for Sigma-Aldrich Co.

## ADDITIONAL TERMS AND CONDITIONS

1. **ACCEPTANCE AND GOVERNING PROVISIONS**
   This order is not an acceptance of any offer to sell but is an offer to purchase which may be accepted only by execution of the acknowledgement copy hereof by Seller and return of such copy to Sigma Chemical Company ("Buyer") within ten (10) days from the date of this order set forth on the reverse side hereof, or by other expression of acceptance, including shipment hereunder. Upon acceptance, this order shall constitute the entire agreement between the parties (except for any additional warranties given by Seller) superseding any and all previous communications and negotiations. Unless specifically agreed to in writing by Buyer, signed by duly authorized personnel of Buyer, no additional or different term or provision (except additional warranties given by Seller) of any quotation, acknowledgement, invoice or other form supplied by Seller shall become part of the contract notwithstanding Buyer's failure to specifically object to such form or provision. The agreement of sale resulting from the acceptance of this order shall be construed and interpreted in accordance with the internal laws of the State of Missouri.

2. **DOCUMENTS AND PAYMENT**
   Seller shall prepare separate invoices in triplicate for each Purchase Order showing cash discount terms, point of shipment, country of manufacture (country of origin) and transportation charges, prepaid or collect. No drafts will be accepted by Buyer; all purchases are an open account to be paid by Buyer's check. Buyer's Purchase Order Number, appearing on the face side hereof, must be shown on all packing lists, containers, invoices and correspondence relating to the order. All applicable supplemental documents or invoices shall be surrendered promptly by Seller at Buyer's request. If price is omitted on the Purchase Order, it is agreed that the Seller's price will be the lowest prevailing price in effect and in no event is this order to be filled at a higher price than was last previously quoted or charged without Buyer's written consent.

3. **DELIVERY, DELAY AND ANTICIPATION**
   Seller is to include with each shipment all necessary documents to insure prompt delivery to Buyer. Seller shall deliver the goods, in the quantities and within the time or times in accordance with the specifications (and any sample or model approved by Buyer) at the prices specified on the face side hereof or in any document attached hereto or referred to herein. Failure of Seller to comply with such requirements shall entitle Buyer, in addition to any other rights or remedies, to cancel this order and be relieved of all liability for any undelivered portion. Any failure by Buyer to exercise its remedies with respect to any installment shall not be deemed to constitute a waiver with respect to subsequent installments. Seller shall not unreasonably anticipate delivery by purchasing materials or manufacturing quantities in excess of what is reasonably required to meet Buyer's delivery schedule. Goods received in advance of Buyer's delivery schedule may, at Buyer's option, be returned at Seller's expense or be accepted and payment withheld until the scheduled delivery date.

4. **SHIPPING AND RISK OF LOSS**
   All goods shall be suitably packed, marked and shipped in accordance with shipping instructions of the Buyer and otherwise in accordance with the requirements of common carriers so as to obtain the lowest transportation cost. Seller agrees to comply with all state, federal and international shipping regulations regarding the shipping of containers and labeling. Buyer shall have the right to route all shipments. Routing specified may not be changed without Buyer's written permission. No charge shall be made to Buyer for packing, boxing or cartage unless separately itemized on the face hereof; but Seller shall be liable to Buyer for any loss or damage resulting from Seller's failure to act so as to provide adequate protection during shipment. Risk of loss shall be upon Seller until conforming goods are delivered to and have been inspected and accepted by Buyer. Additional expenses, charges or claims incurred as a result of deviation from the specified route, non-compliance with other shipping instructions, or improper description of the shipment in shipping documents shall be Seller's responsibility. Buyer and Seller shall assist each other in procuring all documents and other information required to ship items ordered hereunder or necessary for the prosecution of claims against carriers arising out of any such shipment.

5. **INSPECTION**
   All goods purchased hereunder shall be subject to inspection and testing at the discretion of the Buyer at any reasonable time and from time to time before, during or after manufacture or delivery. Notwithstanding any payment that may be made, no goods are to be deemed accepted until Buyer has had an opportunity to inspect and test them. Any goods which may be defective, show physical signs of damage, or are not in accordance with specifications, including, but not limited to, quantity or performance, may be rejected by the Buyer.

6. **WARRANTIES**
   In addition to its standard warranty, Seller warrants that all goods supplied hereunder shall:
   (a) be free and clear of all liens and encumbrances, good and merchantable title thereto being in the Seller;
   (b) be free from any defects in design, material or workmanship and of good and merchantable quality;
   (c) conform to Buyer's specifications or the sample approved by Buyer, as the case may be, or be fit for the known purposes for which purchased hereunder; and
   (d) comply and have been produced, processed, delivered and sold in conformity with all applicable federal, state or other laws, administrative regulations and orders.
   The foregoing warranties shall survive inspection, delivery and payment.

If any such goods shall be found to be unsatisfactory, defective or inferior in quality, or not to conform to Buyer's specifications or any other requirements hereof (including Seller's warranties), Buyer may, at its option, retain such goods at an adjusted price, hold such goods at Seller's risk and expense pending Seller's specific instructions, or return them to Seller for replacement, credit or refund, as Buyer shall direct. Buyer shall be reimbursed by Seller for all of its costs and expenses in connection with the storage, handling, packing and/or transporting of any such defective or otherwise nonconforming goods, and Seller shall assume all risk of loss or damage in transit to goods returned by Buyer pursuant hereto.

7. **FAIR LABOR STANDARDS CERTIFICATE, EQUAL OPPORTUNITY (U.S. SELLERS)**
   Seller hereby certifies that all goods furnished hereunder shall have been produced in compliance with all applicable requirements of Sections 6, 7 and 12 of the Fair Labor Standards Act of 1938, as amended, and of regulations and orders of the Administrator of Wages and Hours Division issued under Section 14 thereof, and in accordance with all applicable state and federal laws and regulations governing general conditions for labor employed in the production of such goods. Seller certifies that it is in compliance with Executive Order 11246, as amended, and the rules, regulations and orders issued thereunder, including, without limitation, where applicable, provisions regarding non-segregated facilities for its employees, written affirmative action compliance programs and filing of Standard Form 100 (EEO-1), and Seller agrees that the equal opportunity clause therein is incorporated herein by reference. Seller certifies that it is in compliance with 29 U.S.C. §793 (Section 503 of the Rehabilitation Act of 1973), relating to employment of qualified handicapped individuals and 38 U.S.C. §2012 (Section 402 of the Vietnam Era Veterans Readjustment Act of 1974), relating to employment of disabled and Vietnam era veterans, and the rules, regulations and orders issued thereunder, and agrees that where applicable, the affirmative action clauses therein are incorporated herein by reference. Seller certifies that it is in compliance with Executive Orders 11625 and 12138, as amended, relating to minority and women's business enterprises, and the rules, regulations and orders issued thereunder, and agrees that any applicable contract clauses therein are incorporated herein by reference.

8. **OSHA CERTIFICATION (U.S. SELLERS)**
   Seller, in accepting Buyer's order, certifies it is in compliance with the Occupational Safety and Health Standards Act of 1970 (OSHA) and the orders, rules and regulations issued pursuant thereto as in effect on the date of such acceptance.

9. **CANCELLATION BY BUYER**
   Buyer shall have the right to cancel this order without cause, and Buyer's liability for cancellation of this order without cause shall be limited to Seller's actual cost for work and materials applicable solely to this order which shall have been expended when notice of cancellation shall be received by Seller. Buyer may, at its option, cancel this order without liability to Seller (except for conforming shipments previously accepted by Buyer) in the event Seller shall cease to exist or become insolvent or the subject of bankruptcy or insolvency proceedings or shall commit a material breach in the performance of any part of its obligations hereunder.

10. **INDEMNIFICATION AGAINST CLAIMS**
    Seller agrees to protect, defend, indemnify and hold Buyer harmless from all claims, losses, damages, and expenses, which may be asserted against or be incurred by Buyer whether direct or indirect, foreseeable or unforeseeable, including those resulting from injuries to any person or damage to any property, caused in any manner by any act or failure to act of Seller in connection with the furnishing of the goods covered by this Purchase Order, or because of any imperfection or defect in said goods, or based upon any theory of product liability or strict liability in tort, or because of the failure of such goods to be in accordance with the description of such goods as may appear in any catalog, analytical information report, or other technical bulletin as is furnished or utilized by Buyer, or because of the failure of such goods to be produced in compliance with the applicable requirements of this Purchase Order.

11. **TAXES**
    Buyer shall not be liable for any taxes, duties, customs, or assessments in connection with the purchase and/or delivery of goods ordered hereunder, except such as are expressly set forth on the face hereof.

12. **INSURANCE**
    If the work and service covered by this order or any part thereof are to be performed by Seller on Buyer's premises, Seller agrees to indemnify and hold Buyer harmless from and against all loss or damage arising out of or in connection with the work covered by this order (including all third party claims and claims of Seller's employees); to perform the work in accordance with safety rules of the Buyer and applicable safety laws and regulations and prior to commencement of the work hereunder, to furnish Buyer with satisfactory evidence of public liability, property damage, and workmen's compensation insurance, with limits satisfactory to Buyer in all instances.

13. **PATENT, TRADEMARK AND COPYRIGHT INFRINGEMENT**
    Seller agrees to defend, at its cost and expense, all claims, demands and actions which may be asserted against Buyer, its successors, assigns and customers (whether direct or indirect) for all alleged patent, trademark and copyright infringement resulting from the use or resale of goods covered by this Purchase Order, and to indemnify and hold Buyer harmless against all costs, expenses (including attorney's fees) and judgments related to such claims, demands and actions.

**EXHIBIT 1**